**EQUITABLE GAS COMPANY, A DIVISION OF EQUITABLE RESOURCES, INC., Petitioner**

v.

**COMMONWEALTH** of Pennsylvania, **PENNSYLVANIA PUBLIC UTILITY COMMISSION**, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.

**National Fuel Gas Distribution Corporation, Petitioner**

v.

Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.

**UGI Utilities, Inc.—Gas Division, Petitioner**

v.

Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.

**Philadelphia Gas Works, Petitioner**

v.

**Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.**

**The Peoples Natural Gas Company d/b/a Dominion Peoples, Petitioner**

v.

Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.

**PG Energy, a Division of Southern Union Company, Petitioner**

v.

Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.

**Columbia Gas of Pennsylvania, Inc., Petitioner**

v.

Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Office of Consumer Advocate and Office of Small Business Advocate, Respondents.

Commonwealth Court of Pennsylvania.

Argued April 4, 2005.

Decided July 13, 2005.

Kevin J. Moody, Harrisburg, for petitioners.

Lawrence F. Barth, Harrisburg, for respondent, PA PUC.

Christine Maloni Hoover, Harrisburg, for respondent, Office of Consumer Advocate.

Carol F. Pennington, Harrisburg, for respondent, Office of Small Business Advocate.

BEFORE: McGINLEY, J., LEADBETTER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEADBETTER.

The Commonwealth of Pennsylvania (Commonwealth) and the Pennsylvania Public Utility Commission (PUC) have filed an application for summary relief with respect to the petition for review filed by several natural gas distribution companies[1] (referred to by the parties and the Commission as NGDCs), seeking to recover portions of their general assessment

---

1. The natural gas distribution companies are Equitable Gas Company, a division of Equitable Resources, Inc. (Equitable Gas), National Fuel Gas Distribution Corporation

payments during Fiscal Years 2002–2003, 2003–2004 and 2004–2005 in accordance with Section 510 of the Public Utility Code (Code), 66 Pa.C.S. § 510.[2] The distribution companies have filed a cross-application for partial summary relief. Upon review, we grant the PUC's application for summary relief and deny the distribution companies' cross-application.

Pursuant to Section 510(a) of the Code, all public utilities in Pennsylvania are required to pay assessments levied by the PUC to cover the PUC's estimated costs of administering the Code. Section 510(b) describes the manner in which the PUC is to determine assessments. That Section provides, in pertinent part:

(1) The commission shall determine for the preceding calendar year the amount of its expenditures *directly attributable to the regulation of each group of utilities furnishing the same kind of service,* and debit the amount so determined to such group....

(2) The commission shall also determine for the preceding calendar year the balance of its expenditures, not debited as aforesaid, and allocate such balance to each group in the proportion which the gross intrastate operating revenues of

each group for that year bear to the gross intrastate operating revenues of all groups for the year.

(3) The commission shall then allocate the total assessment prescribed by subsection (a) to each group in the proportion which the sum of the debits made to it bears to the sum of the debits made to all groups.

(4) Each public utility within a group shall then be assessed for and shall pay to the commission such proportion of the amount allocated to its group as the gross intrastate operating revenues of the public utility for the preceding calendar year bear to the total gross intrastate operating revenues of its group for that year.

66 Pa.C.S. § 510 (emphasis added). Thus, Subsection 510(b)(1) relates to direct costs and Subsection 510(b)(2) relates to indirect costs. The significance of this classification is that direct costs are to be assessed to the public utilities within a specific utility group while the indirect costs are spread across all public utilities in the Commonwealth.

■ It is undisputed that the distribution companies are public utilities in the gas utilities group and, therefore, that they are subject to assessment under Section 510 and that the PUC's expenses in regulating them are properly classified as direct costs. However, pursuant to the Nat-

(National Fuel), UGI Utilities, Inc.—Gas Division (UGI Utilities), Philadelphia Gas Works (Philadelphia Gas), The People's Natural Gas Company d/b/a Dominion Peoples (Dominion Peoples), PG Energy and Columbia Gas of Pennsylvania, Inc. (Columbia Gas).

2. The Office of Consumer Advocate (OCA) and the Office of Small Business Advocate (OSBA) have filed briefs in support of the

Commonwealth's and the PUC's application for summary relief. The OCA and the OSBA allocate their regulatory costs pursuant to their own enabling legislation. The OCA's authority to allocate expenses is found at 71 P.S. § 309–4(b)(1). The OSBA's authority is found at 73 Pa.C.S. § 399.46(b). Both the OCA's and the OSBA's authority to allocate assessments provide for the allocation of direct costs similar to the methodology set forth in Section 510(b)(1) of the Code.

ural Gas Choice and Competition Act, 66 Pa.C.S. §§ 2201–2212, retail customers in Pennsylvania may now also purchase gas from independent natural gas suppliers (referred to by the Commission and other parties as NGSs) while continuing to receive distribution services from local distribution companies like the petitioners herein. The dispute centers around the status of these natural gas suppliers, which are not public utilities for purposes of assessments under Section 510. *See Independent Oil and Gas Ass'n of Pennsylvania v. Pennsylvania Pub. Util. Comm'n*, 804 A.2d 693 (Pa.Cmwlth.2002) (*Independent Oil*). Nevertheless, the PUC incurs expenses in regulating these natural gas suppliers, and the question is whether these are direct costs to be borne by the gas distribution companies or indirect costs to be allocated among all public utilities subject to assessment. The PUC has assessed them as direct costs, and the distribution companies argue that this court should find them to be indirect costs.

The relevant facts are as follows. The PUC issued notices of assessment to the distribution companies for Fiscal Years 2002–2003, 2003–2004 and 2004–2005. The distribution companies paid the assessments, but filed objections to the PUC. Relying on *Independent Oil*, the petitioners contended that insofar as our court has determined that natural gas suppliers are not public utilities, the distribution companies cannot be assessed by the Commission for any PUC expenses related to the regulation of natural gas suppliers, except as a portion of the Commission's overall *indirect* costs under 66 Pa.C.S. § 510(b)(2).

The objections were assigned to a PUC Administrative Law Judge (ALJ). In lieu of hearings, the parties submitted a stipulation of issues and facts, in addition to briefs in support of their positions.[3] The ALJ certified a Material Question to the Commission regarding whether the Commission's Fiscal Office, the Office of Consumer Advocate and the Office of Small Business Advocate should begin tracking total costs associated with the regulation of natural gas suppliers for assessment purposes. The ALJ recommended that the Commission answer the material question in the affirmative, thus agreeing with the distribution companies that PUC expenses related to the regulation of natural gas suppliers should be classified as indirect expenses and attributed to all types of public utilities under Subsection 510(b)(2). The distribution companies also posed a preliminary question to the Commission regarding whether the ALJ correctly determined that the costs associated with the regulation of natural gas suppliers are not direct costs of regulating public utilities and, therefore, are indirect costs and thus properly assessed to all public utilities.

■ The Commission answered the distribution companies' preliminary question in the negative, rendering the ALJ's material question moot. In doing so, the Commission determined that even though natural gas suppliers are not public utilities, costs associated with the regulation of natural gas suppliers are direct costs of regulating the gas utility group and, therefore, are assessable to public utilities within the gas group specifically, instead of indirect costs to be assessed to all public utilities. The Commission reasoned that:

> [s]ubsection 510(b)(1) of the Code clearly sets forth that where possible, the costs of regulation should be allocated directly to the industry which created the need

---

**3.** The objections to the FY 2003–04 assessments were subsequently filed and consolidated with the proceedings on the FY 2002–03 assessments. Objections to the FY 2004–05 assessments were filed after the ALJ's decision.

for the regulatory activity involved. In the matter before us, there is no dispute that the costs of regulation of NGSs are directly related to the gas industry. PUC Opinion and Order (dated, August 9, 2004) at 10. Thereafter, the distribution companies filed a petition for review with our court in the nature of an action at law for refunds.[4] The PUC then filed an application for summary relief, which is now before us for disposition.[5]

■ In response to the PUC's application for summary relief, the distribution companies reassert the same argument presented to the PUC. The PUC, along with the Office of Consumer Advocate and the Office of Small Business Advocate, argue that the distribution companies have failed to state a legal claim upon which relief may be granted, since the Commission correctly determined that the costs of regulating natural gas suppliers are costs directly attributable to the regulation of the natural gas industry group and, therefore, are properly allocated to that group pursuant to Subsection 510(b)(1) of the Code.[6] In making its determination, the Commission reasoned:

4. Our court has jurisdiction over this matter pursuant to 42 Pa.C.S. § 761(a)(1), which provides that the Commonwealth Court, with certain exceptions not relevant here, shall have original jurisdiction over all actions against the Commonwealth. Section 510(e) of the Public Utility Code provides, in pertinent part that:

[a]ny public utility making any such payment may, at any time within two years from the date of payment, sue the Commonwealth in an action at law to recover the amount paid, or any part thereof. . . .

66 Pa.C.S. § 510(d). Additionally, Section 510(e) bars public utilities from seeking review of a PUC decision regarding assessments through our court's appellate jurisdiction:

The provisions of this part relating to the judicial review of orders and determinations of the commission shall not be applicable to any findings, determinations, or assessments made under this section. The procedure in this section providing for the determination of the lawfulness of assessments and the recovery back of payments made pursuant to such assessment shall be exclusive of all other remedies and procedures.

66 Pa.C.S. § 510(e).

5. Summary relief is proper where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried and that the movant is entitled to relief as a matter of law. *Pennsylvania Indep. Petroleum Producers v. Dep't of Envtl. Res.*, 525 A.2d 829, 832 (Pa. Cmwlth.1987).

6. In its brief, the PUC also relied on *PPL Energyplus, LLC and Delmarva Power and Light Co. t/a Connective Energy v. Commonwealth of Pennsylvania*, 814 A.2d 861 (Pa. Cmwlth.2003) (*PPL Energyplus*), rev'd *Delmarva Power and Light Co. t/a Connective Energy and PPL Energyplus, LLC v. Commonwealth of Pennsylvania*, 582 Pa. 338, 870 A.2d 901 (2005), wherein we held that electric generating companies were "public utilities" subject to assessment within the meaning of Section 510, as well as that the PUC did not err in grouping electric generation suppliers in the same Subsection 510(b) utility industry group as electric distribution companies, since both furnish electric service. The PUC analogized our holding in *PPL Energyplus* to the instant matter, arguing that "including natural gas suppliers along with the natural gas utility industry group is fully consistent with that holding." Brief of Respondent at 3. Shortly before oral argument in the present matter, however, our Supreme Court reversed our holding that the electric generation suppliers were public utilities subject to assessment. *See Delmarva Power and Light Co. t/a Connective Energy and PPL Energyplus, LLC v. Commonwealth of Pennsylvania*, 582 Pa. 338, 870 A.2d 901 (2005). This decision placed the electric generating companies in the same position as the natural gas suppliers which, pursuant to *Independent Oil*, are not public utilities subject to assessment. The second issue, whether the generating companies could be grouped with the distribution companies for purposes of allocation of costs and calculation of assessments under Subsection 501(b), was not before our Supreme Court in *PPL Energyplus* and was not addressed.

The OCA argues that the "costs of regulating natural gas suppliers that are providing natural gas service to NGDC customers ... are *not* indirect costs.... Rather, these costs are attributable to the regulation of natural gas service to NGDC customers and should therefore be retained within the natural gas group for assessment purposes." According to the OCA, Chapter 22 of the Code (relating to natural gas competition) changed the way the Commission regulates NGDCs by introducing "additional means for NGDC customers to receive natural gas supply service." The OCA states that Chapter 22 "broadened the way in which the Commission regulates NGDCs to include the licensing and limited regulation of NGSs who provide gas to NGDCs to serve their customers. The costs ... incurred ... are directly attributable to the overall regulation of NGDCs and the provision of natural gas service to NGDC customers."

The OCA points out that the costs of regulating NGSs in no way related to the regulation of electric, telephone, water, wastewater or stream service. The OCA also states that the costs are not so general in nature as to preclude their attribution to a specific utility service.

The OCA asserts that since the costs of regulating NGSs are specifically related to regulatory tasks on behalf of utility customers who receive natural gas service under Chapter 22 of the Public Utility Code, there is no basis to conclude that the costs are indirect costs to be paid by all utility groups.

With regard to the ALJ's discussion of the statute, the OCA argues that the ALJ placed too much emphasis on the fact that NGSs are not utilities and failed to account for the fact that NGSs are wholly engaged in the provision of natural gas to NGDC customers. The OCA asserts that [*Independent Oil*] stands for the proposition that an NGS is not a utility and, therefore, may not be charged for assessments pursuant to Section 510 of the Code. However, that is not determinative of the question of whether the costs related to the regulation of NGSs are directly related to the gas industry group for assessment purposes.

The OCA submits that costs related to the provision of natural gas service under Chapter 22 of the Code, by either an NGS or an NGDC, are costs properly

These issues are significantly different in two respects. First, Subsection 510(a) deals with which companies may be assessed, and anything other than a public utility is clearly excluded from its terms. On the other hand, Subsection 510(b) deals with how assessments for the PUC's regulatory expenses will be allocated and computed, and there is no question that the cost of regulating the natural gas suppliers is included in the computation, but only to which group those expenses will be allocated. In addition, Section 510(a), at issue in the Supreme Court's decision in *PPL Energyplus*, states that *public utilities* shall pay assessments, but in Subsection 501(b)(1), discussing allocation of costs, the statute refers only to "group[s] of *utilities furnishing the same kind of service.*" (emphasis added). Then, Subsection 501(b)(4), states

that, "Each *public utility* within a group shall be assessed for and shall pay ...." (emphasis added). We believe that this choice of words is significant and supports the Commission's position that the General Assembly intended to allocate the expenses of regulating utilities like the natural gas suppliers, which are not public utilities within the meaning of the Code, to those public utilities furnishing service in the same industry. At all events, this statutory language leads us to conclude that the holding that electric generation suppliers are not public utilities who may be required to pay assessments does not dispose of the question how the cost of regulating electric generation suppliers, or by analogy natural gas suppliers, should be allocated among the public utilities paying assessments.

allocable to the gas industry group. The OCA states:

> The fact that an NGS cannot be charged for its share of the costs incurred by the agencies does not mean that all other non-gas groups must pay. It means that the NGDCs and their customers—the gas service customers—must pay these costs as allocated to the gas group.

We find the OCA's arguments to be compelling. Subsection 510(b)(1) of the Code clearly sets forth that where possible, the costs of regulation should be allocated directly to the industry which created the need for the regulatory activity involved. In the matter before us, there is no dispute that the costs of regulation of NGSs are directly related to the gas industry. The NGDCs argue, and the ALJ found, that the issue is whether the NGSs are "utilities." We disagree. For purposes of allocating the expenses of regulation pursuant to Section 510 of the Code, the question is whether the expenses of regulating NGSs are directly attributable to the regulation of a group of utilities furnishing the same kind of service.

. . . .

[W]e find that the costs of regulating NGSs are so "directly attributable" to the regulation of the natural gas industry group, that they properly fall within the confines of Subsection 510(b)(1) of the Code.

PUC Opinion and Order (dated, August 9, 2004) at 9–11. The Commission's interpretation of the Code is entitled to substantial deference. *U.S. Steel Corp. v. Pub. Util. Comm'n*, 850 A.2d 783 (Pa.Cmwlth.2004). Even if that were not the case, however, we agree with the Commission that Subsection 510(b)(1) evidences a clear intent that the costs of regulation should be allocated directly to the industry which created the need for the regulatory activity involved. Because the costs of regulating natural gas suppliers are directly related to the gas industry, the PUC properly allocated such costs to the gas industry.

As such, the Commonwealth and the PUC have established that no genuine issues of material fact exist and that they are entitled to relief as a matter of law. Accordingly, we grant the PUC's request for summary relief and deny the distribution companies' cross-application for partial summary relief.

### ORDER

AND NOW, this 13th day of July, 2005, the Commonwealth of Pennsylvania and the Public Utility Commission's application for summary relief in the above captioned matters are hereby GRANTED. The distribution companies' cross-applications for summary relief are hereby DENIED.